# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD WAGONER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:05-CV-438-CAN |
| | ) |
| INDIANA DEPARTMENT OF | |
| CORRECTION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On July 18, 2005, Plaintiff, Richard Wagoner ("Wagoner"), proceeding *pro se*, filed his original complaint in this lawsuit against the Indiana Department of Correction and other prison entities and officials for violations of constitutional and civil rights during his incarceration. On March 6, 2007, this Court appointed Kent Hull as counsel for Wagoner. Mr. Hull has continued to represent Wagoner ever since. On June 28, 2011, this case was reassigned to the undersigned based on the consent of the parties.

On September 6, 2011, Wagoner, through counsel, filed his now operative Third Amended Complaint against the Indiana Department of Correction ("IDOC") and the Commissioner of the Indiana Department of Correction in his official capacity ("the

Commissioner").[1] The Third Amended Complaint alleged violations of his Eighth and Fourteenth Amendment rights, as well as violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.,* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. On March 28, 2013, IDOC and the Commissioner filed their Motion for Summary Judgment. On June 14, 2013, Wagoner filed a response. On July 12, 2013, Wagoner filed a reply. The Court issues the following opinion as discussed below pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## I. RELEVANT BACKGROUND

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

Wagoner was incarcerated under IDOC supervision from February 18, 2000, until September 10, 2012. He completed his Community Transition Program on February 24, 2013, and was released from IDOC supervision. He remains under the supervision of Tippecanoe County Probation. Throughout his incarceration, Wagoner was required to use a wheelchair for mobility because he was a paraplegic, diagnosed with paraplegia from the solar plexus down with a closed head injury, as the result of a car accident in 1996.

Through this complaint and his deposition on July 18, 2012, Wagoner raised issues regarding the conditions of his imprisonment at multiple IDOC facilities throughout the twelve years of his incarceration. In particular, he noted assorted physical barriers that limited his access in IDOC facilities. Specifically, Wagoner described problems with the toileting and showering processes as the result of his disability, movement of his wheelchair in a small cell,

---
[1] Wagoner's Third Amended Complaint was improperly entitled "Second Amended Complaint." Doc. No. 122.

low bed in a cell, mobility in a weight room and law library, and broken sidewalks that limited wheelchair mobility. In addition, Wagoner complained that he endured ongoing problems, including improper fit, repair, and maintenance, with the wheelchair that IDOC provided. Wagoner also complained that he did not receive the medical care he required or reasonable accommodations to participate in IDOC programs, education, recreation, and social services. Wagoner contends that he suffered undue pain, spinal issues, pressure sores, depression, and isolation because of the conditions imposed on him while in custody.

Wagoner informed prison officials of some of his concerns and dissatisfaction with the conditions he faced in multiple ways. He complained verbally to assorted officials. He wrote at least one letter to the Superintendent. Indiana Protection and Advocacy Services ("IPAS") sent at least three letters to prison officials on Wagoner's behalf regarding his toileting and wheelchair issues. His lawyer then directed him to discontinue direct contact with prison officials and raised Wagoner's ongoing concerns through IDOC's counsel. Wagoner also filed some formal grievances in compliance with IDOC's official grievance policy.

IDOC's grievance policy had five steps, each handled by a person or group of increasing responsibility and greater flexibility in fashion a remedy or remedies. If a prisoner was dissatisfied with a response at any step, he could appeal to higher authorities through Step 5. Pursuing a grievance through all five steps constituted exhaustion of all administrative remedies available through IDOC. Between July 18, 2003, and July 18, 2005, Wagoner pursued two grievances all the way through Step 5.[2]

---

[2] Wagoner also pursued four unexhausted grievances against IDOC officials between July 18, 2003, and July 18, 2005, which he attached to his Second Amended Complaint as exhibits. *See* Doc. No. 110-2.

On December 1, 2003, Wagoner filed a grievance in which he complained that he had been denied the proper backrest for his wheelchair and contended that without the proper backrest, he faced serious risk to his "health, equality, safety and welfare." Doc. No. 154-2 at 6. He requested that his current backrest be replaced with a Jay backrest like the one that was on his wheelchair when he was first incarcerated and that was prescribed for him by a doctor. *Id.* Wagoner's request was denied based on the medical staff's assertion that he had received a new wheelchair in the fall of 2003, that the backrest was a recent purchase that fit the new wheelchair after being transferred from the old wheelchair, and that the backrest posed no risk to his health. *Id.* at 6–7. Wagoner's appeals through Step 5 all failed with officials claiming that any problem had been resolved at the facility level. *Id.* at 1.

On December 1, 2003, Wagoner also filed a grievance regarding his transportation to medical appointments. Specifically, Wagoner complained that he was not secured properly in the handicap van during one of his visits to an outside medical provider for required care. *See* Doc. No. 154-3 at 1. In addition, Wagoner also complained about being held in a holding tank while waiting for his appointment. *Id.* Like in his first grievance, Wagoner indicated that the transportation and holding issues presented "a serious risk to [his] health, safety and welfare." *Id*. Wagoner's request was denied after transportation staff explained that Wagoner and his wheelchair were properly restrained in the handicap van, which the medical staff instructed them to use when transporting Wagoner. *Id*. at 4. The request to avoid the holding tank was also denied noting that Wagoner's only problem would be boredom. *Id.* at 1.

On July 18, 2005, Wagoner initiated this action against IDOC and the Commissioner seeking relief from what he contends to be a systemic failure of IDOC and its contractors to comply with the ADA, the Rehabilitation Act, and the Eighth and Fourteenth Amendments

requiring significant changes in the operation of the Indiana prison system. The operative Third Amended Complaint alleges that Wagoner suffered injuries due to physical barriers affecting his movement; transportation in vehicles not equipped to carry an individual with disabilities; Defendants' failure to provide Wagoner with an appropriate wheelchair in proper repair; Defendants' failure to provide proper pain medication and other medical treatment; and Defendants' failure to make reasonable accommodations or modifications, including removal of physical barriers and relocation of programs to foster Wagoner's participation in programs and services available to all prisoners. In particular, Wagoner claims that he was particularly vulnerable, as an individual with a disability, to injury or illness resulting from the lack of proper medical care and a properly maintained wheelchair. He contends that IDOC staff and contractors were often not present to prevent or correct any violations of Wagoner's rights and that he fears retaliation by IDOC staff based on his complaints.

In his response to Defendants' motion for summary judgment, Wagoner clarified that he is only seeking non-injunctive relief from IDOC and the Commissioner under 42 U.S.C. § 1983 to the extent that 42 U.S.C. § 1983 allows damages for alleged violations of the Eighth Amendment, Title II of the ADA, and § 504 of the Rehabilitation Act. Doc. No. 171 at 2. The Court now addresses Defendants' motion for summary judgment as to all of Wagoner's claims.

II. ANALYSIS

    A. **Summary Judgment Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). In

determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).

In opposing Defendants' motion for summary judgment, Wagoner argues that there are genuine disputes of material fact requiring the Court to deny Defendants' motion and hold a *Pavey* hearing. The Court accepts as true the conditions that Wagoner claims he faced while incarcerated. Furthermore, the Court even concedes that the conditions were less than pleasant. Before moving to any consideration of whether IDOC and the Commissioner are entitled to summary judgment, however, the Court must first determine whether Wagoner met his obligation under the Prison Litigation Reform Act ("PLRA") to exhaust his administrative remedies as to any of his claims before filing this lawsuit.

**B.     Wagoner is not entitled to a *Pavey* hearing and only exhausted administrative remedies for his wheelchair backrest and transportation grievances.**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The courthouse door must be kept closed to prisoner claims until all efforts toward exhaustion of those remedies have run their course. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Failure to exhaust is an affirmative defense for which the defendants bear the burden of proof. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) (citing *Jones v. Bok*, 549 U.S. 199 (2007)). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement [such that the] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Therefore, if there is a genuine dispute of material fact as to whether the prisoner exhausted his administrative remedies, the court must first conduct a hearing on exhaustion to determine what claims are properly before the court. *See Pavey*, 544 F.3d at 742.

In this case, Defendants argue that Wagoner has only exhausted his administrative remedies as to his wheelchair backrest and medical transportation grievances filed in December 2003. Wagoner agrees that he only exhausted his administrative remedies as to those two grievances. However, he claims that Defendants made the IDOC grievance process unavailable to him by refusing to respond to his complaints, or those of his attorney or his IPAS advocate, and by threatening retaliation if he were to file additional grievances. As a result, Wagoner believes that a *Pavey* hearing is necessary to resolve a genuine dispute of fact as to whether

7

Defendants' conduct prevented him from exhausting his remedies as to his remaining complaints about the conditions he faced while in IDOC custody.

Wagoner's interest in a *Pavey* hearing is strong as evidenced by his filings in this case. On April 18, 2013, when the instant motion for summary judgment was already pending, Wagoner filed his first motion asking the Court to schedule a *Pavey* hearing. [Doc. No. 163]. The Court denied Wagoner's first motion without prejudice and directed him to incorporate any exhaustion argument into his response to Defendants' motion for summary judgment from which the Court would determine whether a *Pavey* hearing is needed. [Doc. No. 168 at 4]. On June 14, 2013, Wagoner filed his response brief in opposition to the instant motion for summary judgment, which became ripe on July 12, 2013, with Defendants' reply. Before the Court could rule, however, Wagoner filed a second motion for a *Pavey* hearing on July 15, 2013.

Summary judgment is the "put up or shut up" point in a lawsuit. *Hammel*, 407 F.3d at 859. In this case, the Court specifically directed Wagoner to address his *Pavey*-related arguments in his response to the motion for summary judgment. Wagoner disregarded the Court's order, however, and chose to save the bulk of his *Pavey* argument for a second *Pavey* motion. Because the Court afforded Wagoner the opportunity to make his *Pavey* argument fully within the confines of his response brief, the Court will not consider Wagoner's pending second *Pavey* motion or any of the accompanying exhibits as part of its exhaustion analysis.[3]

In support of his request for a *Pavey* hearing, Wagoner invokes *Kaba v. Stepp*, 458 F.3d 678, 685–86 (7th Cir. 2006) for the proposition that where a prisoner's attempts to file grievances results in intimidation by prison officials, a more discriminating analysis, likely a

---

[3] The Court only needs to address Wagoner's pending second motion for a *Pavey* hearing [Doc. No. 173] and Wagoner's pending motion to file a supplemental complaint [Doc. No. 174] if any claims survive the instant motion for summary judgment.

8

*Pavey* hearing, is required to determine whether the prisoner could avail himself of the formal grievance process. Wagoner relies solely on his own sworn deposition testimony as evidence that there are disputes of genuine material fact as to whether he properly exhausted his administrative remedies. The sworn testimony of a party, like Wagoner, may be enough to establish a genuine dispute of material fact. *See id*. at 686–87; *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Yet Wagoner's testimony does not conflict with the material facts relied upon by Defendants in claiming that he failed to exhaust. Specifically, Defendants do not challenge Wagoner's assertions that he made complaints or even that he faced challenging circumstances with toileting, wheelchair maintenance and repair, and other medical concerns. However, Wagoner is not entitled to a *Pavey* hearing simply because he was dissatisfied with the conditions he faced. A *Pavey* hearing is only warranted if there is a genuine dispute of material fact as to whether Wagoner exhausted his administrative remedies. For the reasons discussed below, Wagoner has failed to demonstrate such a dispute of fact.

In addressing the exhaustion issue, Wagoner conclusively and generally asserts that disputes of fact exist and that Defendants have selectively designated facts that they know are contradicted. Wagoner directs the Court to large chunks of "counterevidence" from his deposition transcript, but fails to show how his counterevidence contradicts Defendants' designated facts. In addition, much of Wagoner's counterevidence describes events and conduct occurring after July 18, 2005, the date of his original complaint in this action. In response to Wagoner's post-complaint allegations and evidence, Defendants argue that Section 1997e(a) procedurally bars all claims arising from incidents occurring after the complaint was filed on July 18, 2005. *See Ford*, 362 F.3d at 399–400. By failing to address or challenge Defendants'

9

argument that his claims of misconduct occurring after July 18, 2005, are barred, Wagoner waived any argument as to those claims.

Furthermore, Wagoner's Third Amended Complaint and his brief in opposition to Defendants' motion for summary judgment are vague as to the details behind the unsuccessful grievance efforts and retaliatory environment that allegedly made the formal grievance process unavailable to him. The Court assumes that the many pages of deposition testimony cited by Wagoner are intended as evidence to show that exhaustion was futile. Yet, Wagoner fails to identify clearly what he perceives to be the pertinent evidence and to develop an argument of futility accordingly. As a result, the Court can only guess as to whether Wagoner's contention that a factual dispute as to exhaustion actually exists. And it is not the Court's job "to root through [a convoluted] record like a pig hunting for truffles" in order determine if a factual dispute exists. *Ortega v. Forks RV*, 1:10-CV-227, 2012 WL 1870362, at *6 (N.D. Ind. May 22, 2012) (quoting *Ogdon v. Hoyt,* 409 F. Supp. 2d 982, 987 (N.D.Ill.2006)); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Therefore, the Court finds that Wagoner is not entitled to a *Pavey* hearing because he has not presented a factual dispute as to exhaustion that warrants closer analysis.

Even if Wagoner had shown a factual dispute as to exhaustion clearly, his futility argument would not be sufficient to overcome the Seventh Circuit's strict compliance approach to exhaustion.

> A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules requires.")

*Dole*, 438 F.3d at 809. Even when a prisoner is requesting relief that the designated administrative review board lacks the authority to grant or when a prisoner believes that exhaustion is futile, he must still use the prison's chosen grievance process to preserve his rights to pursue claims of poor conditions in violation of federal law in court. *Id.* at 808–09; *see also Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("[T]here is no exception [to exhaustion] for prisoners who allege 'imminent danger' . . . .").

Here, the Court does not challenge that Wagoner may have felt as if filing a grievance would be futile or result in retaliation. However, Wagoner has not clearly identified evidence of misconduct by jail officials that could, viewed in a light most favorable to Wagoner, justify excusing him of his exhaustion obligations. What is clear and undisputed is that IDOC had a grievance system, that claims related to medical care and accommodations within IDOC facilities were grievable, and that Wagoner only exhausted the system as to his backrest and transportation grievances. Despite his knowledge that the grievance system existed and his successful exhaustion of two grievances, Wagoner chose to make repeated additional informal complaints about the conditions he faced on his own or through his IPAS advocate. Such informal complaints do not comport with the procedures of IDOC's grievance system and cannot satisfy the exhaustion requirement. For the same reason, Wagoner's complaints through his attorney do not satisfy the PLRA's exhaustion requirement.[4]

In the end, it was Wagoner's obligation, and no one else's, to exhaust the administrative remedies available to him through IDOC's grievance system before filing this lawsuit. He did so as to the wheelchair backrest and medical transportation issues only. No *Pavey* hearing is

---

[4] The complaints raised through Wagoner's attorney are also useless in this case because they were made after July 18, 2005, when Wagoner filed his original complaint.

11

warranted in this case regarding any additional claims. Only the two exhausted claims remain before the Court.

> **C.    IDOC and the Commissioner in his official capacity are entitled to judgment as a matter of law on Wagoner's constitutional Eighth Amendment and Fourteenth Amendment claims because they are not proper parties under 42 U.S.C. § 1983 and Section 1983 does not provide for vicarious liability.**

Wagoner brings his Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983, which provides a private cause of action to redress the violation of federally secured rights by a person action under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). Specifically, section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 only provides a private cause of action against "persons" under color of state law violating a citizen's constitutional and statutory rights. Neither a State, including its agencies, nor its officials acting in their official capacities is a "person" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005); *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (holding that state officials may be sued for damages in their individual capacities, but the Eleventh Amendment precludes an action against them in their official capacities); *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988). Therefore, Section 1983 does not contemplate liability for IDOC or the Commissioner in his official capacity and Wagoner develops no argument that it does.

Section 1983 only creates a cause of action for damages based on the personal liability of state officials. To succeed on such a claim, a plaintiff must show the defendant's personal

12

involvement or participation in, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolfe-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). In this case, Wagoner provides no evidence that the Commissioner was personally involved in the conduct surrounding Wagoner's backrest or transportation grievances, a factual deficiency that precludes liability for the Commissioner in his individual capacity. Moreover, even if Wagoner had established personal involvement on the part of the Commissioner or any other IDOC employee, IDOC could not be held liable for such conduct. The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's action, has no application to Section 1983 actions. *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir. 2000); *Moore v. State of Indiana*, 999 F.2d 1125 (7th Cir. 1993). Similarly, the Commissioner cannot be vicariously liable for the conduct of IDOC employees or contractors. Therefore, Defendants are entitled to judgment as a matter of law on Wagoner's constitutional claims that IDOC and the Commissioner violated his Eighth and Fourteenth Amendment rights because under 42 U.S.C. § 1983, IDOC and the Commissioner are not proper parties and *respondeat superior* does not apply.

> **D. IDOC and the Commissioner in his official capacity are entitled to judgment as a matter of law on Wagoner's Rehabilitation Act and ADA claims because Wagoner was not denied access to IDOC programs or activities related to his wheelchair backrest and medical transportation grievances.**

Beyond his failed constitutional claims, Wagoner raises statutory claims of discrimination based on his disability against IDOC and the Commissioner under Title II of the ADA and Section 504 of the Rehabilitation Act. However, the Eleventh Amendment to the United States Constitution prevents States from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment also bars suits by citizens against their own State in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (7th Cir. 1995). The Eleventh Amendment's jurisdictional bar has been extended to state agencies, such as IDOC. *See Kashani v. Purdue Univ.*, 813 F.2d 843 (7th Cir. 1987). However, a State may waive its Eleventh Amendment immunity. *Meadows*, 854 F.2d at 1069.

### 1. By accepting federal funds for IDOC, the State of Indiana waived its Eleventh Amendment immunity under the Rehabilitation Act.

Under the Rehabilitation Act, a State waives its Eleventh Amendment immunity if it accepts federal funds. 29 U.S.C. § 794; *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003) (citing *Stanley v. Litscher,* 213 F.3d 340, 344 (7th Cir.2000)). The State of Indiana receives federal funds for its prisons, like every other state. *Crawford v. Indiana Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997); *see also Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Therefore, because Indiana accepts federal funds for IDOC, IDOC's and the Commissioner's immunity to suit under the Rehabilitation Act is waived making them proper parties as to Wagoner's claims for damages resulting from conditions that allegedly violated the Rehabilitation Act.

Wagoner has also argued that Title II of the ADA abrogates the parties' Eleventh Amendment immunity citing *United States v. Georgia*, 546 U.S. 151 (2006).[5] However, in that case, the Supreme Court "expressly declined to decide whether states are immune from suits for damages arising from conditions that violate [Title II] but not the Constitution." *Jaros*, 684 F.3d

---

[5] Even when States refuse to waive their immunity, Congress may abrogate Eleventh Amendment sovereign immunity when it "unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)); *see also City of Boerne v. Flores*, 521 U.S. 507, 536 (1997); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

at 672 n.5 (citing *United States v. Georgia*, 546 U.S. at 159). Therefore, because none of Wagoner's constitutional claims remain, IDOC and the Commissioner's immunity for his ADA claims remains an open question. *See Norfleet*, 684 F.3d at 690.

Yet the Court need not resolve the question of IDOC's and the Commissioner's official immunity under the ADA in this case because the relief available under Title II of the ADA and Section 504 of the Rehabilitation Act are coextensive.[6] *See Jaros*, 684 F.3d at 671. Moreover, the legal analysis of the statutes' substantive reach is the same except for the additional element in the Rehabilitation Act requiring receipt of federal funds, which has already been established in this case. *Compare* 29 U.S.C. § 794 (Rehabilitation Act), *with* 42 U.S.C. § 12132 (ADA). Therefore, because Wagoner would be limited to a single recovery for IDOC's and the Commissioner's allegedly discriminatory conduct related to the backrest and transportation grievances, the Court may dispense with any analysis of Wagoner's claims under Title II of the ADA as well as any attendant immunity questions and address solely Wagoner's Rehabilitation Act claims. *See Jaros*, 684 F.3d at 672.

### 2. Neither IDOC nor the Commissioner in his official capacity denied Wagoner access to IDOC programs or activities related to Wagoner's wheelchair backrest or transportation grievance.

Section 504 of the Rehabilitation Act provides that:

[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be

---

[6] Although Wagoner identifies the Commissioner in his official capacity as a defendant in the operative Third Amended Complaint, his brief states that he seeks damages to the extent allowed by 42 U.S.C. § 1983, which also authorizes actions against state officials in their individual capacities. *Compare* Doc. No. 122 at 2, *with* Doc. No. 171 at 2. In this case, however, the Court need not discuss any liability for the Commissioner in his individual capacity because there is no personal liability under Title I or Title II of the ADA. *See Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *cert denied*, 531 U.S. 1190 (2001) (citing *Silk v. Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Similarly, because Title II of the ADA and Section 504 of the Rehabilitation Act are coextensive, there is no personal liability under the Rehabilitation Act. *See Jaros*, 684 F.3d at 671.

>denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). A "'program or activity' means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). To succeed on a Rehabilitation Act claim against a program or activity receiving financial assistance, like IDOC, a plaintiff must establish that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672 (citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir.2006); *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004); *Grzan v. Charter Hosp. of Nw. Ind.,* 104 F.3d 116, 119 (7th Cir.1997)). Claims based on negligence in providing services, particularly medical services, rather than discrimination do not fall within the scope of the Rehabilitation Act. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (citing *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir.2005); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996)).

In this case, it is undisputed that IDOC is receiving federal assistance and Wagoner is a qualified individual with a disability. Wagoner claims, however, that IDOC and the Commissioner denied him access to programs and activities because of his disability. Although Wagoner does not clearly apply the facts of his two exhausted grievances to the Rehabilitation Act, the Court assumes that Wagoner is claiming that Defendants violated the Rehabilitation Act by (1) failing to provide him with a medically proper wheelchair backrest in 2003; (2) failing on one instance in 2003 to secure him and his wheelchair properly in a van while transporting him to an outside facility for medical treatment; and (3) requiring that he wait for his offsite medical

16

appointment in a holding room.  Plaintiff has failed, however, to direct the Court to specific facts in dispute that could lead to a legal conclusion that Defendants violated the Act.  The Court refuses to sort through Wagoner's brief for such facts or to construct any arguments on his behalf.  *See Dunkel*, 927 F.2d at 956.

Additionally, the record as presented does not suggest that Wagoner was denied access to a wheelchair or any of the related medical equipment or care necessary to treat his paraplegia and other medical conditions.  Indeed, the record shows just the opposite.  Specifically, IDOC provided Wagoner with a new wheelchair and backrest shortly before Wagoner filed his backrest grievance.  Similarly, IDOC transported Wagoner to offsite medical providers for treatment that IDOC could not provide in-house.  IDOC staff also transported Wagoner in a handicap accessible vehicle for Wagoner's safety.  Therefore, Wagoner was not denied access to a medically necessary wheelchair backrest, to outside medical care, or to safe transportation.  Moreover, any time spent in a holding room delayed Wagoner's access to medical care, but did not deny him access to the care.  Consequently, Wagoner's complaints amount to mere disagreement with the medical and transportation services provided.  Such disagreement raises concerns more akin to negligence than discrimination.

Therefore, Wagoner has not established a genuine dispute of material fact related to his wheelchair backrest and medical transportation grievances that he was denied access to IDOC programs and activities because of his disability despite his non-specific and conclusory assertions to the contrary.  Through his brief, Wagoner has merely presented his own conclusions that IDOC and its employees should have handled his medical care differently.  Such a difference of opinion or allegation of negligence does not constitute a violation of the Rehabilitation Act.  As such, Wagoner's claims cannot succeed and IDOC and the

Commissioner in his official capacity are entitled to judgment as a matter of law on Wagoner's claims under the Rehabilitation Act. Wagoner's claims under Title II of the ADA would fail for the same reasons if immunity did not preclude them.

### E. Qualified immunity protects IDOC and the Commissioner from liability under the Rehabilitation Act.

Even if Wagoner's backrest or transportation claim against the Commissioner survived, qualified immunity would protect him from liability under the Rehabilitation Act. Qualified immunity shields government officials who are performing discretionary functions from liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants argue that the Commissioner would be entitled to qualified immunity because it is not clearly established that the backrest and transportation claims violate any statutory or constitutional rights that he could have reasonably anticipated. The Court agrees. Moreover, Wagoner does not address Defendants' qualified immunity argument thereby waiving any such argument.

## III. CONCLUSION

As discussed above, there is no genuine dispute of material fact as to Wagoner's exhaustion of administrative remedies as required under the PLRA. Therefore, Wagoner is not entitled to a *Pavey* hearing. In addition, Wagoner has only exhausted his administrative remedies as to his wheelchair backrest and transportation grievances. The PLRA precludes him from raising all of his remaining claims related to other incidents and conduct in this action.

As to Wagoner's surviving backrest and transportation claims, no genuine disputes of material fact exist. In addition, IDOC and the Commissioner are entitled to judgment as a matter

18

of law on Wagoner's Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983 and his statutory claims under Section 504 of the Rehabilitation Act and Title II of the ADA.  Therefore, the Court now **GRANTS** IDOC and the Commissioner's motion for summary judgment. [Doc. No. 154]. The Clerk is instructed to enter judgment for Defendants on all claims.  Because judgment has resulted in the termination of this case, the Court need not address Wagoner's other pending motions.  [Doc. Nos. 173 & 174].

    **SO ORDERED.**

    Dated this 26th day of November, 2013.

                                            S/Christopher A. Nuechterlein
                                            Christopher A. Nuechterlein
                                            United States Magistrate Judge